*Northfield School Bd. v. Washington South Education Ass'n*, No. 114-2-18 Wncv (Teachout, J., June 20, 2018).
[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

# STATE OF VERMONT

| | |
|---|---|
| **SUPERIOR COURT** | **CIVIL DIVISION** |
| **Washington Unit** | **Docket No. 114-2-18 Wncv** |

**NORTHFIELD SCHOOL BOARD**
  **Plaintiff**

  **v.**

**WASHINGTON SOUTH EDUCATION
ASSOCIATION and PAUL CLAYTON**
  **Defendants**

## DECISION
### Plaintiff's Motion to Enjoin Arbitration
### Defendants' Motion to Dismiss

In December 2017, the Northfield School Board terminated the employment of Defendant Paul Clayton, a physical education teacher in its middle school. Mr. Clayton and his collective bargaining representative, Defendant Washington South Education Association, pursued a grievance, which was unsuccessful. They then initiated arbitration. The School Board filed this lawsuit in response, claiming that Mr. Clayton is not entitled to arbitration as a matter of law. The School Board seeks declaratory judgment pursuant to 12 V.S.A. §§ 5673–5674 and an injunction enjoining arbitration proceedings. Defendants filed a motion to dismiss, arguing that case law supports Mr. Clayton's right to pursue arbitration. Oral argument on the motions of both parties was held on May 10, 2018.

16 V.S.A. § 1752 sets forth the "[g]rounds and procedures for suspension and dismissal" of school teachers. Those grounds and procedures are "deemed" by statute to be in "[e]very teacher's contract." 16 V.S.A. § 1752(k). The statute empowers the superintendent to "suspend a teacher under contract on the grounds of incompetence, conduct unbecoming a teacher, failure to attend to duties, or failure to carry out reasonable orders or directions of the superintendent and school board." *Id*. § 1752(c). Following suspension, a teacher is entitled to appeal the suspension and have a hearing before the school board. Whether the teacher appeals or not, the school board's duty is to "affirm or reverse the suspension or take such other action, including dismissal, as may appear just." *Id*. § 1752(h). Thus, any actual termination decision, or any alternate disposition following suspension, is made only by the board.

Mr. Clayton received written notice of suspension and his right to appeal it to the school board, *id*. § 1752(e), but neither he nor the Association appealed or appeared at the executive session on his behalf when the Board considered the matter. The Board affirmed the suspension and terminated Mr. Clayton's employment. It was after all this, and having chosen to not participate in the proceedings under § 1752, that Defendants then attempted to grieve Mr. Clayton's termination and later sought to arbitrate it.

The disputed issue in this case is whether, when a teacher does not participate in a hearing before the Board, 16 V.S.A. § 1752(j) operates to make the School Board's termination decision final or whether Defendants nevertheless may challenge it by grievance and arbitration under a collective bargaining agreement.

16 V.S.A. § 1752(j) provides that "[n]o action shall lie on the part of a teacher against any school district for breach of contract by reason of suspension or dismissal unless the procedures herein described have been followed by said teacher." Defendants had declined to participate in the proceedings under 16 V.S.A. § 1752.

At oral argument, Defendants clearly articulated their position that, having not participated in § 1752 proceedings, they accept that a *judicial action* is foreclosed by § 1752(j). However, they maintain that *only* a judicial action is foreclosed. Pursuit of a grievance and arbitration as provided in the collective bargaining agreement is nevertheless available, they argue, and that is what they seek. The School Board's position is that failure to participate in the hearing before the school board forecloses any opportunity to pursue a subsequent grievance and arbitration.

Resolution of the issue calls for interpretation of Section 1752(j) quoted above. The Board argues that arbitration is an "action" and that since Mr. Clayton did not follow the procedure of appearing before the Board when it was considering his case, he gave up any opportunity to pursue arbitration. Defendants interpret "action" to mean "judicial action" and they interpret the statute to preclude a teacher who chose to not participate in § 1752 proceedings from filing a lawsuit, but not to preclude arbitration. They note that the statutory language was formerly "action at law" and was shortened to "action" after the merger of law and equity.[1] Therefore, they argue, the statute forecloses a judicial action in the circumstances of this case, but not grievance and arbitration proceedings under a collective bargaining agreement. They argue that these remain available regardless of the teacher's lack of participation in § 1752 proceedings. Defendants' position has been and is that, despite lack of compliance with § 1752, arbitration is specifically permitted in these circumstances under § 1752(j) as interpreted by *Brattleboro Union High School Bd. v. Windham Southeast Ed. Ass'n*, 137 Vt. 1 (1979).

All teacher contracts "shall be deemed to contain the provisions of [§ 1752] and any provision in the contract inconsistent with this section shall be considered of no force or effect." 16 V.S.A. § 1752(k). The various provisions of § 1752 create an orderly process that results in final board decisions regarding suspensions and terminations. The provisions imply that the overriding purpose of § 1752(j) is to confirm that if a teacher seeks to challenge the board's final decision, the teacher must have participated in the process that led to that decision. The language of the statute does not suggest that its purpose was to provide that if a teacher refuses to

---

[1] Defendants' point about the legislature's change of the expression "action at law" to simply "action" is unclear. Their logic implies that they would view the statute when the expression was "action at law" as barring only judicial actions seeking legal, as opposed to equitable, relief, and not applying at all to nonjudicial proceedings. It remains altogether unclear why the legislature would create a clear suspension and termination process that carefully protects a teacher's due process rights, and require a teacher to participate in it, but only if the teacher thereafter might seek one avenue for relief and not another, with finality of the Board's decision hanging in the balance.

participate in the § 1752 process, certain avenues of relief following an unfavorable decision are available and others are unavailable.

The statute provides for a classic requirement to exhaust administrative remedies before pursuing relief in a forum outside the administrative body. It enables the school board to have the facts and perspective of the teacher before it when it is considering a decision as significant as suspension or dismissal, and gives it full information that may enable it to "take such other action . . . as may appear just." Any other reading undermines the utility of the process itself and conflicts with § 1752(k).

The *Brattleboro* decision on which Defendants rely simply does not address the issue presented here: the effect of § 1752(j) when the teacher fails to participate in administrative proceedings. Instead, the *Brattleboro* Court ruled that § 1752(j) cannot be read to require that proceedings following a suspension and termination occur *exclusively* in court—an administrative grievance and arbitration otherwise available remain available under § 1752(j). The *Brattleboro* Court did not, however, rule that those mechanisms are available when the teacher failed to comply with the § 1752(j) obligation to follow § 1752 procedures. That issue was not presented in that case.

Defendants' argument that § 1752(j) bars judicial actions only and therefore does not apply to a grievance or arbitration proceeding is not persuasive. Nothing in the context of § 1752 suggests that § 1752(j) should have such a narrow application. Such an interpretation would deprive the board of the opportunity to seek a fair resolution after an opportunity to hear and consider all facts and points of view, including those that might not be available without the teacher's participation. If the legislature intended to create a distinction between different types of "actions" as Defendants advocate, such that a teacher could not file a judicial lawsuit without participating in the statutory procedure but could pursue arbitration, it could have chosen words to make that clear. Instead, it used the word "action," which has the broadest possible implication. The language, together with the reasonable policy of exhaustion of administrative remedies that the provisions of the statute imply, support Plaintiff's rather than Defendants' interpretation of the statute. Moreover, the Defendants' interpretation would create an untenable situation: if they were to prevail in arbitration and then seek a court order to enforce an arbitration decision, they would be unable to file a judicial action to do so. The above interpretation harmonizes statutory provisions, statutory intent, and practical implementation. Thus, Defendants' motion to dismiss must be denied, and Plaintiff's request to enjoin arbitration must be granted.

ORDER

For the foregoing reasons, the School Board's Motion to Enjoin is *granted* and Defendants' Motion to Dismiss is *denied*. Plaintiff's attorney shall prepare a judgment.

Dated at Montpelier, Vermont this _____ day of June 2018.

_____
Mary Miles Teachout
Superior Judge

3